# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2027 | **DATE** | 10/14/2004 |
| **CASE TITLE** | John Roberts vs. Standard Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion to amend his complaint to add CPS as a named defendant is denied [8-1] [8-2] and plaintiff's motion to amend his complaint to add a count II seeking attorney fees is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices: 3 | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | 21 |
| ✓ | Notices mailed by judge's staff. | | OCT 1 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 10/14/2004 | |
| | | | date mailed notice | |
| | IS | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | IS mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN ROBERTS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 2027 |
| | ) | |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| **STANDARD INSURANCE COMPANY,** | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

DOCKETED
OCT 1 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff John Roberts moves this Court to amend his one-count complaint against Defendant Standard Insurance Company by (1) adding Chicago Public Schools ("CPS") as a named defendant to his Count I breach of contract claim and (2) adding a Count II claim for attorney fees against Defendant Standard Insurance Company. Defendant objects to the addition of CPS as a named defendant but not to the addition of Plaintiff's Count II. This case was removed to federal court pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the controversy exceeds $75,000.00. This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1.[1]

---

[1] If successful, Plaintiff's attempt to add CPS would destroy federal diversity jurisdiction and federal subject matter jurisdiction in this case. However, because this case would continue in the Illinois state courts and because Defendant has the opportunity to seek a Federal Rules of Civil Procedure 72(a) review of this Court's order, Plaintiff's motion is not considered dispositive. *See Johnson v. Wyeth*, 313 F. Supp. 2d 1272, 1275 (N.D. Ala. 2004).

## I. Background

Plaintiff alleges that at all relevant times he was employed as a teacher by the Chicago Board of Education/Chicago Public Schools. As an employee of Chicago Public Schools, Plaintiff was insured under Defendant Standard Insurance Company and Chicago Board of Education/Chicago Public School's group policy number 625285 owned by CPS ("Group Insurance Policy"). Defendant Standard is an insurance company based in Portland, Oregon, which issues policies and provides insurance coverage, including owned disability coverage policies, to insured in Cook County, Illinois. Plaintiff alleges that at all relevant times he was insured under the Group Insurance Policy.

On or about February 1997, Plaintiff suffered heart failure and heart complications affecting his ability to continue working as a teacher. As a result of this illness, Plaintiff ceased to be employed by CPS as a teacher and made a claim with Defendant for disability benefits under the Group Insurance Policy. Plaintiff filed all necessary papers and submitted all medical examinations required for the claim. On or about March 23, 1997, Plaintiff was determined by Defendant to be disabled under the terms of the Group Insurance Policy and on or about June 8, 1997, Plaintiff began to receive benefits from Defendant in the amount of $1,819.84 per month.

In May 2000, Defendant informed Plaintiff that he was no longer qualified as disabled under the terms of the Group Insurance Policy because he had returned to work as a teacher. On May 12, 2000, Defendant suspended payments of benefits to Plaintiff. Plaintiff denied having returned to work as a teacher and demanded that Defendant resume payment of his monthly disability benefits. Defendant refused to resume the payments and Plaintiff has not received a benefit payment since May 12, 2000.

On February 20, 2004, Plaintiff filed a complaint against Defendant in the Circuit Court of Cook County, claiming $81,892.80 in damages due to Defendant's failure to make benefits payments since May 2000. Plaintiff also sought interest on the $81,892.80 and reinstatement of his monthly disability payments pursuant to the terms of the Group Insurance Policy. On March 18, 2004, Defendant removed this case from state court to federal court pursuant to 28 U.S.C. § 1332, as the Plaintiff and Defendant were completely diverse in citizenship and more than $75,000.00 was in controversy. On April 19, 2004, Defendant filed an answer, affirmative defense and counterclaim against Plaintiff claiming that Plaintiff improperly collected $15,732.88 in benefits. And on May 6, 2004, Plaintiff filed his Motion for Leave to Amend Plaintiff's Complaint and Objection to Removal ("Plaintiff's Motion"), to add CPS as a defendant, to adjust damages sought to "a sum in excess of $50,000.00 plus interest from the date of the demand for payment," and to add a Count II for attorney fees pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

Plaintiff filed a Memorandum in Support of His Motion for Leave to Amend and Objection to Removal on July 15, 2004 ("Plaintiff's Memorandum"). In both Plaintiff's Motion and Memorandum, Plaintiff alleges, on information and belief, that CPS acted as agent for Defendant in the sale and/or marketing of the Group Insurance Policy and that CPS had sole possession of the Group Insurance Policy as agent, co-venturer[2] or partner with Defendant. Plaintiff admits in his memorandum that CPS is the owner of the Group Insurance Policy and that CPS is listed as the "policyowner" in the insurance contract, but Plaintiff claims the insurance contract lacks a true

---

[2] As "co-venturer" is "[a] person who undertakes a joint venture with one or more persons," Black's Law Dictionary (8th ed. 2004), the Court uses the terms co-venturer and joint-venturer interchangeably (as Plaintiff does in Plaintiff's Motion and Memorandum).

explanation of the relationship between Defendant and CPS. Plaintiff also alleges in his memorandum that 28 U.S.C. § 1332's "amount in controversy" requirement is not met in this case as there is less than $75,000.00 in controversy. In Plaintiff's Memorandum and at oral argument, Plaintiff explains that his amended claim for damages reflects a "set-off" that will occur if Plaintiff wins his case. Plaintiff explains that, if he were awarded $81,892.80 (plus interest) in damages then Defendant would probably be entitled to its counterclaim for $15,732.88, but Plaintiff refuses to concede that Defendant's counterclaim is meritorious and denies owing Defendant $15,732.88. (Oral Argument, Sept. 1, 2004.)

Defendant opposes Plaintiff's motion to amend his complaint to add CPS as a defendant. Defendant claims that Plaintiff is improperly trying to add CPS as defendant in order to deprive this Court of federal diversity jurisdiction.

## II. Discussion

### A. Count I: Motion to Amend

Plaintiff seeks leave to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Leave to amend a complaint is ordinarily freely granted. Fed. R. Civ. P. 15(a); *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004). However, when an amendment will result in the remand of a case that has been removed to federal court 28 U.S.C. § 1447(e) applies. Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Because permitting joinder will result in remand, federal courts must examine whether an amendment joining a nondiverse

party is proper. *See Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F. Supp. 2d, 997, 1001 (N.D. Ill. 2003); *Goutanis v. Mut. Group (U.S.)*, No. 92 C 1689, 1995 WL 86588, at *6 (N.D. Ill. Feb. 24, 1995). In the Northern District of Illinois, courts consider the following equitable factors in determining whether joinder is proper: (1) extent to which the joinder of the nondiverse party is sought merely to defeat federal jurisdiction, (2) timeliness of the request, (3) prejudice to the parties, and (4) any other equitable considerations, including defendant's interest in maintaining a federal forum. *Perez*, 261 F. Supp. 2d at 1001; *Vasilakos v. Corometrics Med. Sys., Inc.*, No. 93 C 5343, 1993 WL 390283, at *3 (N.D. Ill. Sept. 30, 1993). In addition to these factors, the Seventh Circuit suggests another ground for refusing to amend a complaint – the futility of the amendment. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992); *County of Cook v. Philip Morris, Inc.*, No. 97 C 3295, 1997 WL 667777, at *2 (N.D. Ill. Oct. 17, 1997). An amendment is considered futile when "it fails to state a valid theory of liability, or could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (citations omitted). In such an instance, adding a nondiverse party is improper and constitutes "fraudulent joinder." *Poulos*, 959 F.2d at 74.

1. 1447(e) Equitable Factors

    a. **Attempting to defeat federal jurisdiction**

The first element this Court considers is the extent to which the joinder of CPS is sought merely to defeat federal jurisdiction. In his May 2004 Motion, Plaintiff states, "Not until the receipt of the [Group Insurance Policy] was the Plaintiff fully aware that the [CPS] was the actual policy owner." (Pl.'s Mot. Am. at 1.)

The Court is immediately suspicious that Plaintiff's sole motive in seeking to join CPS is to defeat federal diversity jurisdiction. In his complaint, Plaintiff acknowledges that CPS is listed as policyowner in the Group Insurance Policy. (Pl.'s Am. Compl. at 1; Pl.'s Mem. Supp. Mot. Am. at 2.) Plaintiff has been insured under the Group Insurance Policy since February 1997. (Pl.'s Am. Compl. at 2.) Plaintiff received insurance benefits under the terms of the Group Insurance Policy from June 8, 1997, until May 12, 2000. (Id.) Plaintiff has been disputing his insurance benefits since May 12, 2000. (Id. at 2-3.) Plaintiff originally filed his complaint in Illinois state court in February 2004 but did not seek to add CPS as a defendant until this case was removed to federal court. The Court is not convinced that CPS's involvement recently came to light. Furthermore, no explanation is given as to how a view of the Group Insurance Policy listing CPS as an insured somehow informed Plaintiff that CPS is a joint-venturer or partner with the insurance company. "Without explanation, it is certainly suspect that plaintiff seeks leave to amend [his] complaint to add new parties for the sole purpose of defeating the court's diversity jurisdiction. This factor militates heavily in defendant['s] favor against granting the amendment." *County of Cook*, 1997 WL 667777, at *4. *See also Zuccaro v. Ford Motor Co.*, No. 03 C 2152, 2003 WL 22668834, at *3 (N.D. Ill. Nov., 10, 2003) ("When a plaintiff was aware at the time of the filing of her original complaint of the identity of the defendant she now seeks to add, there arises some suspicion of the plaintiff's motives to amend.")

Suspicion of Plaintiff's motive grows stronger as he spends the first page of Plaintiff's Memorandum contesting diversity jurisdiction on "amount in controversy" grounds. Plaintiff argues that, per 28 U.S.C. § 1332(a), federal jurisdiction does not exist in this case because the amount in controversy is less than $75,000.00. (Pl.'s Mem. Supp. Mot. Am. at 1-2.) On the date

this suit began, Plaintiff demanded $81,892.80 plus interest for unpaid monthly benefits from May 12, 2000, (the date Defendant suspended insurance payments) until February 20, 2004 (the date of filing). Plaintiff, however, changes the language of his demand in his proposed amended complaint and now seeks, "a sum in excess of $50,000.00 plus interest from the date of the demand for payment." (Pl.'s Am. Compl. at 3.) Plaintiff explains that the new demand reflects the fact that Defendant's $15,732.88 counterclaim (which was filed for the first time in federal court) should be deducted from his $81,892.80 claim when determining the amount in controversy. (Pl.'s Mem. Supp. Mot. Am. at 1-2.) Plaintiff refuses, however, to concede that he owes Defendant $15,732.88. (Oral Argument, Sept. 1, 2004.)

Plaintiff's argument fails. Under 28 U.S.C. § 1332(a), "[t]he amount *in controversy* is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins." *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001). The Court finds that Plaintiff's original demand for $81,892.80 plus interest satisfies the amount in controversy required for federal diversity jurisdiction. Plaintiff's proposed amendment merely changes the language of his demand, not the relief sought, in an attempt to escape federal diversity jurisdiction.

### b. Timeliness of request

Where a plaintiff is dilatory in seeking an amendment, it may be inequitable to grant Plaintiff's motion. In *County of Cook*, Judge Manning found that, "[t]wo months and three weeks is hardly an undue delay, especially where no significant activity has occurred in the action." *County of Cook*, 1997 WL 667777, at *2. In this case, Defendant Standard filed notice of removal on March 18, 2004, and Plaintiff moved to amend his complaint on May 6, 2004. While Plaintiff

was not particularly dilatory in filing his amendment, our case is different from *County of Cook*. In the intervening two-and-a-half months in *County of Cook*, no pleadings were filed by the defendant, no discovery conducted by either party, no schedules set by the court and no substantive or procedural issues addressed by the court. *Id.* Unlike *County of Cook*, in this case, Defendant Standard filed its answer, affirmative defense, and counterclaim in the intervening month-and-a-half. Comparing this case to *County of Cook*, the Court finds that the timeliness element does not clearly favor or disfavor Plaintiff's motion to amend.

### c.     Prejudice to Parties

Where removal of a case forces one party to litigate several related lawsuits in state and federal court, that party may be prejudiced by a federal court's refusal to amend the complaint and remand the case to state court. Wasteful duplication, unnecessary costs and judicial efficiency may favor consolidating proceedings and should factor into a court's decision to permit the amendment of a nondiverse defendant. *Vasilakos*, 1993 WL 390283, at *4. Plaintiff does not suggest that he is pursuing similar lawsuits in state court nor that considerations of cost or efficiencies should factor into this Court's decision. Plaintiff does argue that he will be "greatly prejudiced if he is not allowed to fully and thoroughly conduct discovery with regard to [CPS]." (Pl.'s Mot. Am. at 1.) Defendant counters that Plaintiff can easily obtain discovery from CPS with subpoenas so no prejudice will result if this Court refuses to grant Plaintiff's amendment. The Court agrees with Defendant and will not permit CPS to be added for discovery purposes alone. Because, in this case, there is only one suit for damages and it will either be in state or federal court, the Court finds that Plaintiff would not be prejudiced by a refusal to grant his amendment.

#### d. Defendant's interest in a federal forum

The Defendant is an Oregon corporation with a stated interest in a federal forum. (Def.'s Mem. Opp'n Pl.'s Mot. at 9.) Plaintiff is an Illinois resident seeking to remand this case back to Illinois state court. Federal diversity jurisdiction exists to protect out-of-state parties from the presumed biases of local courts. *See Poulos*, 959 F.2d at 73; *Hart v. Dow Chemical*, No. 95 C 1811, 1997 WL 627645, at *6 (N.D. Ill. Sept. 30, 1997). Defendant's interest in a federal forum is obviously legitimate and is institutionalized in our federal laws.

The Court finds that, overall, the equitable factors relating to 28 U.S.C. § 1447(e) heavily favor Defendant. The motive of the party seeking to amend a complaint is considered to be the most important factor and that is the factor that weighs most heavily against Plaintiff. *Connelly v. Gen. Motors*, No. 86 C 8077, 1986 WL 14140, at *2 (N.D. Ill. Dec. 8, 1986) (Courts place particular emphasis on the first factor and, where it appears that the primary purpose of the amendment is to divest the court of federal jurisdiction, amendment will not be allowed.). Defendant's interest in a federal forum favors Defendant and neither the timeliness element nor the prejudice element favors Plaintiff. Because the equitable factors strongly favor Defendant, granting Plaintiff's amendment and remanding this case to state court would be improper.

### 2. Futility

The Court will also consider whether Plaintiff is proposing to add a nondiverse defendant for the sole purpose of destroying diversity jurisdiction, i.e., a fraudulent joinder. Joinder is fraudulent when there is no possibility that a plaintiff can state a cause of action against a nondiverse defendant in state court. *Poulos*, 959 F.2d at 73. In this case, in order for Defendant to

show fraudulent joinder it must show that, after resolving all issues of fact and law in favor of the Plaintiff, there is no reasonable possibility that an Illinois state court would rule against the nondiverse defendant, CPS. *See id.* Such would be the case if Plaintiff's proposed amendment is futile and fails to state a valid theory of liability or cannot withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Bower*, 978 F.2d at 1008.

In this case, Plaintiff seeks to add CPS as a defendant to his breach of contract claim. To survive a 12(b)(6) motion to dismiss, Plaintiff's breach of contract claim must allege that: (1) a contract existed; (2) Plaintiff sufficiently performed his contractual obligations; (3) Defendant breached its contractual obligations; and (4) as a result of Defendant's breach Plaintiff suffered damages. *Essex Real Estate Group, Ltd. v. River Works, L.L.C.*, No. 01 C 5285, 2002 WL 1822913, at *2 (N.D. Ill. Aug. 7, 2002). When ruling on a 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations as true and construes all ambiguities in favor of Plaintiff. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Documents that Defendant attaches to a motion to dismiss may be considered if the documents are referenced in Plaintiff's complaint and are central to Plaintiff's claim. *See Albank Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971, (7th Cir. 2002); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

In Illinois, breach of contract claims may be brought only by parties to the contract, someone in privity with such parties, or by an intended third-party beneficiary of the contract. *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001). In an insurance policy, privity of contract exists between the insurer and the insured party. *Copley v. Pekin Ins. Co.*, 488 N.E.2d 1004, 1008 (Ill. 1986). In this case, Defendant Standard is the insurer and Plaintiff, along with

CPS, the insured. In his Complaint, Plaintiff alleges all four elements of an Illinois breach of contract claim against Defendant. (Pl.'s Compl. at 1-2; Pl.'s Am. Compl. at 1-3.) Plaintiff alleges that CPS is liable for Defendant's contract and contractual obligations because CPS is either an agent, co-venturer or partner of Defendant. Proceeding on information and belief, Plaintiff makes the following allegations: (1) CPS is an agent for Defendant, selling and marketing Defendant's insurance policies, (2) CPS supplied information to the Defendant and helped it investigate whether Plaintiff was qualified to receive insurance benefits, (3) CPS may have granted Defendant "access" to CPS employees in exchange for something, and (4) CPS benefits by having its employees insured. (Pl.'s Am. Compl. at 2; Pl.'s Mem. Supp. Mot. Am. at 2-4; Oral Argument, Sept. 1, 2004.) Plaintiff bases his allegations, at least in part, on the fact that the Group Insurance Policy never explains the relationship between Standard and "policyowner" CPS. (Pl.'s Mem. Supp. Mot. Am. at 2-3.) Plaintiff suggests that discovery may disclose that a partnership or co-venture relationship exists between CPS and Defendant Standard. (Id.)

### a. Agency theory

In Illinois, an agent of a disclosed principal is not liable on a contract nor party to a contract unless he agrees to become personally liable. *Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Gen. Hosp.*, 430 N.E.2d 20, 22-23 (Ill. App. Ct. 1981). Thus, an agent of a disclosed principal who takes an active part in violating a duty the principal owes to a third person is not liable for the agent's own actions, nor is he liable for the wrongful actions of the disclosed principal. *Id.* An agent may be held liable for commitments made on behalf of a disclosed principal, however, if the agent's actions exceed the scope of his authority. *See Degen v. Am.*

*Assoc. of Oral and Maxillofacial Surgeons*, No. 93 C 4879, 1994 WL 13754, at *3 (N.D. Ill. Jan. 14, 1994).

Plaintiff's attempt to use agency law to join CPS is futile because he does not state a valid theory of liability. The principal in this case, Defendant Standard, is disclosed. Plaintiff does not suggest that Defendant's identity was a secret. Standard Insurance Company appears prominently on the first page of the Group Insurance Policy, (Def.'s Mem. Opp'n Pl.'s Mot. at Ex. A), and it is clear from Plaintiff's Complaint that Plaintiff was in constant, direct communication with Defendant regarding his insurance claims. Plaintiff filed his claims with Defendant Standard, submitted medical examinations to Defendant Standard, received insurance benefits from Defendant Standard, and is now suing Defendant Standard for insurance benefits. (Pl.'s Am. Compl. at 2-3.) Because the principal is disclosed, even if Plaintiff could establish that CPS was selling and marketing insurance as an agent for Defendant, a claim against CPS as an agent will survive a motion to dismiss only if Plaintiff alleges that CPS exceeded its authority as agent. Plaintiff makes no such allegation. Rather, Plaintiff seeks to enforce the Group Insurance Policy and sues Defendant Standard for breach of contract, not for fraud, recision or reformation. In other words, Plaintiff does not complain about the terms of the Group Insurance Policy or the marketing or sale of the policy, just with Defendant Standard's failure to make benefits payments. Plaintiff's complaint simply does not contain any allegation that CPS somehow exceeded its authority so Plaintiff fails to allege a valid theory of agency liability against CPS.

### b. Partner or Joint-Venturer

In Illinois, a partnership is "an association of two or more persons to carry on as co-owners a business for profit." 805 ILCS 205/6(1). To establish a partnership, Plaintiff must show that the parties: (1) joined together to carry on a trade or venture, (2) for their common benefit, (3) with each contributing property or services to the enterprise, and (4) having a community of interest in the profits. *Maloney v. Pihera*, 573 N.E.2d 1379, 1387 (Ill. App. Ct. 1991). A partnership is a contractual relationship so there must be a meeting of the minds and an intention by the parties to function as a partnership. *Id.* at 1388.

"The only significant difference between a partnership and a joint-venture is that a joint-venture relates to a single enterprise or transaction while a partnership encompasses a general business of a particular type." *Yokel v. Hite*, 809 N.E.2d 721, 727 (Ill. App. Ct. 2004). A joint-venture, under Illinois law, occurs when two or more parties work together to carry out a single specific enterprise for profit. *Kaporovskiy v. Grecian Delight Foods, Inc.*, 787 N.E.2d 268, 273 (Ill. App. Ct. 2003). To sufficiently allege the existence of a joint venture under Illinois law Plaintiff must allege: (1) an implied or express agreement to carry on a joint enterprise, (2) a manifestation of that intent by the parties, (3) a joint proprietary interest, as demonstrated by the contribution of property, finances, or knowledge by each party to the joint venture, (4) some degree of joint control and management over the enterprise, and (5) a provision for the parties to share in both the profits and the losses of their enterprise. *Yokel*, 809 N.E.2d at 727. Joint control and management is the most significant element. *Id.* The fact that both parties might benefit from a relationship does not make them partners as, "Illinois law has differentiated between shared

economic benefits and the necessary 'shared profits' element of a joint venture." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 90 F. Supp. 2d 952, 955 (N.D. Ill. 2000).

Because federal pleading is notice pleading, "the plaintiff . . . need not plead the elements of the claim with same specificity necessary in state court." *Quadro Enter., Inc. v. Avery Dennison Corp.*, No. 97 C 5402, 1997 WL 769345, at *3 (N.D. Ill. Dec. 5, 1997). Nevertheless, the Court must be able to infer each of the elements of a partnership or joint venture from the facts and conclusions alleged in Plaintiff's complaint. *Barrett v. Poag & McEwen Lifestyle Ctrs.*, No. 98 C 7783, 1999 WL 691850, at *6 (N.D. Ill. Aug. 26, 1999). *See also Yokel*, 809 N.E.2d at 727 (failure to establish one element means there is no joint-venture); *Obrien v. Cacciatore*, 591 N.E.2d 1384, 1389 (Ill. App. Ct. 1992).

Plaintiff's allegations of partnership and/or co-venture would not survive a 12(b)(6) motion to dismiss. Plaintiff alleges, on information and belief, that CPS is a partner or co-venturer of Defendant Standard. In Plaintiff's Memorandum, Plaintiff states that, "[noticeably] lacking from the policy is an explanation of the relationship between Standard and the 'policy owner.' Plaintiff reasonably believes that relationship is, under Illinois law, a joint-venture or partnership . . . ." (Pl.'s Mem Supp. Mot. Am. at 2-3.) The unambiguous language of the Group Insurance Policy suggests otherwise.

The Group Insurance Policy explicitly names CPS as "Policyowner" and the cover page of the policy reads, "The consideration for this Group Policy is the application of the Policyowner and the payment by the Policyowner of premiums as provided herein." (Def.'s Mem. Opp'n Pl.'s Mot. at Ex. A.) While Plaintiff feigns confusion as to the meaning of the word "policyowner," the legal

definition is quite clear. A "policyowner," also known as a "policyholder," is "[o]ne who owns an insurance policy, regardless of whether that person is the insured party." Black's Law Dictionary (8th ed. 2004). As an owner of an insurance policy, CPS is a customer of Defendant Standard (who sells insurance) and not a partner or co-venturer. This relationship is clear from CPS's title as "policyowner" and from CPS's obligation to pay premiums per the Group Insurance Policy. In *Garcia v. Farmers Ins. Exchange*, 121 F. Supp. 2d 667, 669 (N.D. Ill. 2000), the court found that there was no merit to the defendant's argument that a policyholder of an insurance contract was a partner with the insurance company and the court denied the defendant's motion to dismiss for lack of federal diversity jurisdiction. The *Garcia* Court held that:

> "even if every individual citizen of Illinois had a policy with the Exchange it would not matter. The subscribers or policyholders are its customers, not its members. I do not become a member of a business association merely by entering into a contractual relationship with it for the purchase of goods, services, or insurance protection."

*Id.* Plaintiff's argument that the word "policyowner" may imply a partnership or joint-venture is unconvincing. "A court need not accept as true a plaintiff's allegations concerning the meaning of an unambiguous contract. Rather, where a contract is unambiguous, no need exists to resort to other means of interpretation and the effect must be given to the parties' intent as indicated by the *language* itself." *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing Corp.*, 34 F.3d 1310, 1318 n.4 (7th Cir. 1994) (internal citations omitted).

Plaintiff's remaining allegations suggest only that CPS enjoys some benefits from having its employees insured and that CPS may be a responsible customer that discourages abuse of the Group Insurance Policy. At oral argument, Plaintiff stated that CPS retains a benefit when its

employees receive insurance. Even if true, this fact does not imply a partnership or joint-venture. Shared economic benefits of the group insurance plan are not the same as the shared profits and losses of partnership. *See Indus. Hard Chrome*, 90 F. Supp. 2d at 955. Plaintiff also claims that CPS played an active role in assisting Defendant's investigation of Plaintiff's employment status. Plaintiff may feel betrayed by CPS, but the fact that CPS, which owns the Group Insurance Policy and pays the policy's insurance premiums, is not indifferent to the legitimacy of its members' benefits claims does not create an inference of partnership with Defendant. Plaintiff's allegations do not support any inferences of joint control by Defendant and CPS of one another's management or operations, nor do the allegations imply sharing of profits and losses. Finally, Plaintiff poses questions: "On what basis was Standard given access to Chicago Public School employees? Was the marketing of these highly profitable disability policies carried out as a joint venture or partnership between Standard and Chicago Public Schools?" (Pl.'s Mem. Supp. Mot. Am. at 3.) These questions are not even allegations of wrongdoing and the Court cannot infer any elements of partnership or joint-venture from them.

In conclusion, Plaintiff's attempt to join CPS to this litigation through agency, partnership and co-venture is futile and would not survive a motion to dismiss. Plaintiff fails to allege a valid theory of agency liability against CPS and fails to allege the elements necessary to establish a partnership or co-venturer relationship between CPS and Defendant. Plaintiff does not plead sufficient facts or conclusions to create an inference of a claim so joining CPS to this suit would constitute fraudulent joinder.

Because the equitable factors relating to 28 U.S.C. § 1447(e) and the policies behind fraudulent joinder both weigh heavily against Plaintiff, the Court denies Plaintiff's motion to amend its complaint to add CPS as a named Defendant.

### B.     Count II

Plaintiff also moves the Court to amend his Complaint to add a Count II. Plaintiff's Count II seeks attorney fees pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155. Defendant does not contest this amendment as it will not destroy federal diversity jurisdiction. Because there is no objection, the Court grants Plaintiff's motion to amend his complaint to include a Count II for attorney fees.

### III.   Conclusion

The Court denies Plaintiff's motion to amend his complaint to add CPS as a named defendant and grants Plaintiff's motion to amend his complaint to add a Count II seeking attorney fees.

**ENTER ORDER:**

*[signature]*

**MARTIN C. ASHMAN**

Dated: October 14, 2004.                    United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| GREGORY MITCHELL, Esq. | MICHAEL J. SMITH, Esq. |
| 188 West Randolph Street | WARREN VON SCHLEICHER, Esq. |
| Suite 926 | Michael J. Smith & Associates |
| Chicago, IL 60601 | 39 South LaSalle Street |
| | Suite 305 |
| | Chicago, IL 60603 |
| | |
| Attorney for Plaintiff | Attorneys for Defendant |